UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MAXUS CAPITAL GROUP, LLC,** | ) CASE NO.: 1:16-CV-00231 |
| | ) |
| **Plaintiff,** | ) **JUDGE DONALD C. NUGENT** |
| vs. | ) |
| | ) **DEFENDANTS' ANSWER AND** |
| **SUPREME MANUFACTURING, INC.,** *et al.* | ) **COUNTERCLAIM** |
| | ) |
| **Defendants.** | ) |
| | ) |

**DEFENDANTS' ANSWER AND COUNTERCLAIM**

Defendants, SUPREME MANUFACTURING, LLC ("Supreme"), a Pennsylvania corporation, and NEIL E. HOOBLER ("Hoobler"), an individual residing in Pennsylvania, (collectively, "DEFENDANTS") by and through counsel, file their joint Answer and Counterclaim to Plaintiff's Complaint as follows:

**ANSWER:**

1. Paragraph 1 is an introductory paragraph to which no response is required.

2. The identity of this Defendant is ADMITTED as set forth in paragraph 2 of the Complaint.

3. The identity of this Defendant is ADMITTED as set forth in paragraph 3 of the Complaint.

4. Defendants deny the allegations of paragraph 4 of the Complaint because the Defendants are without sufficient knowledge or information to form a basis of their truth.

5. Defendants deny the allegations of paragraph 5 of the Complaint.

6. Defendants admit the allegations of paragraphs 6, 7, 8 and 9 of the Complaint.

7. Defendants deny the allegations of paragraph 10 of the Complaint.

## Count I
### (Breach of Contract – Schedule 001)

8. Paragraph 11 is an incorporating paragraph to which no response is required; however, if a response is required Defendants incorporate and reaffirm their previous answers to paragraphs 1-10 of the Complaint.

9. Defendants admit the allegations of paragraphs 12 and 13 of the Complaint.

10. Defendants deny the allegations of paragraphs 14, 15, and 16 of the Complaint.

## Count II
### (Unjust Enrichment – Schedule 001)

11. Paragraph 17 is an incorporating paragraph to which no response is required; however, if a response is required Defendants incorporate and reaffirm their previous answers to paragraphs 1-16 of the Complaint.

12. Defendants deny the allegations of paragraphs 18 and 19 of the Complaint.

## Count III
### (Replevin – Schedule 001)

13. Paragraph 20 is an incorporating paragraph to which no response is required; however, if a response is required Defendants incorporate and reaffirm their previous answers to paragraphs 1-19 of the Complaint.

14. Defendants deny the allegations of paragraphs 21 and 22 of the Complaint.

15. Defendants admit that Plaintiff demanded payment which included a demand that Defendants pay an "exit fee" that was not included in the contract documents. Defendants deny the remaining allegations of paragraph 23 of the Complaint.

16. Defendants deny the allegations of paragraphs 24, 25, and 26 of the Complaint.

## Count IV
### (Breach of Contract – Schedule 002)

17. Paragraph 27 is an incorporating paragraph to which no response is required; however, if a response is required Defendants incorporate and reaffirm their previous answers to paragraphs 1-26 of the Complaint.

18. Defendants admit the allegations of paragraph 28 of the Complaint.

19. Defendants deny the allegations of paragraph 29 of the Complaint and submit that the written documents speak for themselves.

20. Defendants deny the allegations of paragraphs 30, 31, and 32 of the Complaint.

## Count V
### (Unjust Enrichment – Schedule 002)

21. Paragraph 33 is an incorporating paragraph to which no response is required; however, if a response is required Defendants incorporate and reaffirm their previous answers to paragraphs 1-32 of the Complaint.

22. Defendants deny the allegations of paragraphs 34 and 35 of the Complaint.

## Count VI
### (Replevin – Schedule 002)

23. Paragraph 36 is an incorporating paragraph to which no response is required; however, if a response is required Defendants incorporate and reaffirm their previous answers to paragraphs 1-35.

24. Defendants deny the allegations of paragraphs 37 and 38 of the Complaint.

25. Defendants admit Plaintiff demanded payment which included a demand that Defendants pay an "exit fee" that was not included in the contract documents and advised Defendants of its intention to take action. Defendants deny all other allegations of paragraph 39 of the Complaint.

26. Defendants deny the allegations of paragraphs 40, 41, and 42 of the Complaint.

27. Defendants deny the remaining allegations of the Plaintiff's Complaint.

## DEFENSES, AFFIRMATIVE DEFENSES, AND OBJECTIONS

28. Defendants incorporate the forgoing answers contained in paragraphs 1-27 as if fully set forth herein.

29. As a separate and independent affirmative defense, Defendants allege that the Complaint fails to state a claim upon which relief may be granted.

30. As a separate and independent affirmative defense, Defendants allege that the Complaint, and each and every purported cause of action contained therein, is barred, in whole or in part, because Defendants have been discharged from their obligations, if any, by way of offset, payment, and/or release.

31. As a separate and independent affirmative defense, Defendants allege that the Complaint, and each and every purported cause of action contained therein, is barred, in whole or in part, by the doctrine of laches.

32. As a separate and independent affirmative defense, Defendants allege that the Complaint, and each and every purported cause of, action contained therein, is barred, in whole or in part, by the doctrine of waiver.

33. As a separate and independent affirmative defense, Defendants allege that the Complaint, and each and every purported cause of action contained therein, is barred, in whole or in part, by the doctrine of estoppel.

34. As a separate and independent affirmative defense, Defendants allege that the Complaint, and each and every purported cause of action contained therein, is barred, in whole or in

part, by the doctrine of unclean hands.

35. As a separate and independent affirmative defense, Defendants allege that the Complaint, and each and every purported cause of action contained therein, is barred, in whole or in part, because the alleged conduct of Defendants complained of in the Complaint was approved, consented to, authorized, and/or ratified by Plaintiff through its actions, omissions, and course of conduct.

36. As a separate and independent affirmative defense, Defendants allege that the Complaint, and each and every purported cause of action contained therein, is barred, in whole or in part, because Plaintiff failed to mitigate its damages, the existence of which Defendants expressly deny.

37. As a separate and independent affirmative defense, Defendants allege that the Complaint, and each and every purported cause of action contained therein, is barred, in whole or in part, because any and all conduct of which Plaintiff complains and which is attributed to Defendants was undertaken for a fair and honest reason and in good faith under the circumstances then existing.

38. Defendants hereby give notice that they intend to rely upon such other and further affirmative defenses as may become available during discovery in this action and reserve the right to further amend their Answer to assert any such defenses.

WHEREFORE, Defendants, SUPREME and HOOBLER demand that the Plaintiff's Complaint be dismissed with prejudice at Plaintiff's costs.

## COUNTERCLAIM:

Now come the Defendants, SUPREME MANUFACTURING, INC., ("SUPREME") and

NEIL HOOBLER ("HOOBLER") and incorporate the foregoing paragraphs as if fully set forth herein and state the following as their Counterclaim against the Plaintiff, MAXUS CAPITAL GROUP, LLC ("MAXUS").

**Factual Background:**

39. Supreme designs and manufactures clamshell dredges and other related machinery for use in various industries.

40. Plaintiff provides equipment financing services.

41. On or about May 8, 2014 Supreme and United Rock Products (United Rock) began to negotiate a purchase order for the inventory component parts necessary to fabricate a dredge for mining purposes. United Rock is not a party to this lawsuit at this time.

42. Supreme entered into a financing agreement with Plaintiff whereby Plaintiff would finance the United Rock project by leasing the dredge components to Supreme. Supreme would then construct the dredge equipment and deliver the equipment to United Rock.

43. On September 2, 2014, Supreme entered into Master Lease No. 1425 with Plaintiff that was drafted solely by the Plaintiff (a copy is attached as Exhibit 1).

44. Section 17 of the Master Lease, which was drafted by Plaintiff, contains its Default Provisions.

45. The Master Lease was supplemented by Schedule 001 and Schedule 002 (a copy is attached as Exhibit 2).

46. The principal amount of Schedule 002 of the Master Lease was $3,996,249.96.

47. While negotiating Schedule 002 of the Master Lease, Plaintiff verbally requested a 3% "Exit Fee" on the principal of the Lease to be charged upon Supreme early termination of the contract.

48. Supreme flatly rejected the Exit Fee, verbally and in writing, and the Exit Fee was not included in the contract documents. (Supreme's December 13, 2014 email rejecting the Exit Fee is attached hereto as Exhibit 3).

49. Plaintiff sent Supreme a Leasing Proposal dated December 30, 2014, which did not reference any Exit Fee. (A true and correct copy of the December financing Proposal is attached hereto as Exhibit 4).

50. On January 6, 2015, Plaintiff sent Supreme a revised Leasing Proposal, which again did not reference any "Exit Fee". (A true and correct copy of the January 6, 2015 Leasing Proposal is attached hereto as Exhibit 5).

51. On February 18, 2015, Plaintiff issued a loan Commitment letter which identified further Lease terms that did not include an "exit fee." (A true and correct copy of the Commitment letter is attached hereto as Exhibit 6).

52. Pursuant to the Commitment letter Supreme agreed to pay a monthly rent to Plaintiff until Supreme either (a) purchased "all but not less than all Equipment at the then fair market value" or (b) exercised an "Early Termination Option."

53. Upon final payment pursuant to the Early Termination Option, Plaintiff agreed to convey all of its right, title and interest in the Equipment, free and clear of all liens and encumbrances, to Supreme.

54. On October 14, 2015, Supreme forwarded the principal loan amount of $3,996,249.96 to Plaintiff via a bank transfer.

55. On October 14, 2015, Plaintiff sent Supreme an email with a Statement attached, in which Plaintiff demanded an October 2015 service fee of $2,875.00, interim interest of $12,632.40 and a legal/administrative fee of $5,000.00. (A true and correct copy of said

Email/Statement is attached hereto as Exhibit 7).

56. The Statement also included an Exit Fee of $245,001.00.

57. On October 15, 2015, Supreme sent Plaintiff an email requesting documentation evidencing the "Exit Fee". (A true and correct copy of Supreme's email is attached hereto as Exhibit 8).

58. To date, despite repeated demands, Plaintiff has not provided Supreme with any documentation evidencing the alleged "Exit Fee".

59. On October 15, 2015, Supreme forwarded a check to Plaintiff in the amount of $20,507.40, representing the October 2015 service fee of $2,875.00, interim interest of $12,632.40 and the legal/administrative fee of $5,000.00, but not the "Exit Fee". (A true and correct copy of Supreme's check is attached hereto as Exhibit 9).

60. On October 20, 2015, Plaintiff returned the $20,507.40 to Supreme with a letter stating the check was insufficient because it did not include the "Exit Fee" in the amount of $245,001.00. (Said letter is attached as Exhibit 10).

61. On January 15, 2016, Plaintiff stated that Supreme was in default under the Master Lease for failing to provide certain financial statements. (A true and correct copy of said letter is attached hereto as Exhibit 11).

62. Failure to provide financial statements is not an enumerated event of default under Section 17 of the Master Lease.

63. Despite repeated demands, Plaintiff refuses, and continues to refuse to provide documentation evidencing the alleged "Exit Fee".

64. Despite repeated demands, Plaintiff refuses, and continues to refuse to convey all of its right, title and interest in the Equipment, free and clear of all liens and encumbrances, to

Supreme.

65. On January 19, 2016, a Plaintiff representative appeared to inspect Supreme's manufacturing shop, office equipment and vehicles, which are items included in Schedule 001.

66. On January 21, 2016, Plaintiff instituted the instant matter in the Court of Common Pleas of Cuyahoga County in Cleveland, Ohio.

67. Supreme thereafter removed the case to this Court on February 1, 2016.

### COUNT I – FRAUDULENT INDUCEMENT:

68. Supreme incorporates by reference the statements contained in the preceding paragraphs 39-67 as if the same were set forth at length herein.

69. Maxus Capital induced Supreme to enter into the transaction by representing that there would be no "Exit Fee".

70. The existence (or non-existence) of an "Exit fee" was material to the transaction.

71. Plaintiff concealed the existence of the Exit fee to induce Supreme into entering into the Lease, knowing that Plaintiff would seek to enforce the Exit Fee at the end of the transaction.

72. Supreme reasonably relied upon Plaintiff's representations, because none of the contract documents references an "Exit Fee".

73. Supreme has been harmed by Plaintiff's conduct because Plaintiff will not, as contracted, issue a bill of sale to Supreme conveying all of its right, title and interest in the Equipment free and clear of all liens and encumbrances.

74. Supreme will be harmed by Plaintiff's conduct because Plaintiff has taken affirmative steps to replevin the dredge equipment.

75. Supreme will be harmed by Plaintiff's conduct because Plaintiff seeks $8,336,567.36 in damages on a transaction that involved only $3,996,249.96.

76. Supreme has been harmed by Plaintiff's conduct because Supreme tendered Plaintiff the balance owed in full but Plaintiff refuses to convey all of its right, title and interest in the Equipment free and clear of all liens and encumbrances.

77. Supreme has been harmed by Plaintiff's conduct because Supreme's reputation with its customer, United Rock, and its parent company, Colas, Inc. has been damaged by Plaintiff's conduct.

78. Supreme has been harmed by Plaintiff's conduct because Plaintiff's actions will cause Supreme to be in imminent breach of its United Rock contract and will incur daily delay penalties. (A true and accurate copy is attached hereto as Exhibit 12).

79. As a direct and proximate result of Plaintiff's fraudulent inducement, Defendants have been damaged by being unable to transfer ownership to the ultimate owner of the equipment and will incur daily delay penalties for each day that Plaintiff delays in conveying all of its right, title, and interest in the equipment free and clear of all liens and encumbrances to Defendants.

## COUNT II - BREACH OF CONTRACT

80. Supreme incorporates by reference the allegations contained in the preceding paragraphs 44-79 as if the same were set forth at length herein.

81. The parties had a contract whereby Plaintiff agreed to issue Supreme a bill of sale conveying all of its right, title and interest in the Equipment free and clear of all liens and encumbrances once Supreme made payment in full.

82. Supreme has timely paid all sums due under the contract.

83. Plaintiff returned Supreme's final payment because the final check did not include an "Exit Fee".

84. An "Exit Fee" is not included in the contract documents.

85. Plaintiff refuses, and continues to refuse to issue a bill of sale to Supreme conveying all of its right, title and interest in the Equipment, free and clear of all liens and encumbrances.

86. Plaintiff demands a 3% "Exit Fee" of $245,001.00 on a transaction that involved only $3,996,249.96.

87. Plaintiff is in breach of the contract between the parties.

88. As a direct and proximate result of Plaintiff's breach of contract, Supreme has been damaged by Plaintiff's breach of contract in an amount to be determined by this Court.

## **DECLARATORY JUDGMENT**

89. Supreme incorporates by reference all allegations contained in the preceding paragraphs 44-88 as if the same were set forth at length here in.

90. Supreme is entitled to exercise its Early Termination Option pursuant to the terms of the agreements previously set forth herein without the payment of an "exit fee."

91. Plaintiff refuses to recognize Supreme's right to exercise its Early Termination Option without first paying Plaintiff an "exit fee" that is not set forth in the agreements Plaintiff drafted and solely prepared.

92. By reason of Plaintiff's failure to recognize Supreme's right to exercise its Early Termination Option without paying an "exit fee," there exists a justifiable controversy concerning Supreme's rights to exercise its Early Termination Option. This controversy

can be resolved by the Court through means of a declaratory judgment.

93. Supreme, pursuant to 28 U.S.C. § 2201, seeks a declaration of its right to exercise its Early Termination Option without the payment of an "exit fee" per the terms of its agreement with the Plaintiff.

94. Supreme has no plain, speedy, or adequate remedy at law in that without the requested declaration Supreme will suffer unrepairable harm and injury due to Plaintiff's refusal to recognize Supreme's right to exercise its Early Termination Option without the payment of an "exit fee."

## RELIEF REQUESTED

WHEREFORE, Plaintiff, Supreme Manufacturing, demands the following relief:

(a) An injunction preventing Plaintiff from replevying Supreme's dredge, dredge components and other equipment covered under the Lease(s).

(b) A mandatory injunction directing Plaintiff directed to issue a bill of sale to Supreme conveying all of its right, title and interest in the Equipment, free and clear of all liens and encumbrances.

(c) A determination that Plaintiff has committed fraud in the inducement.

(d) A determination that Plaintiff is in breach of contract.

(e) A determination that Supreme be awarded compensatory damages, exemplary damages, and attorney's fees as a direct result of Plaintiff's fraudulent inducement and breach of contract.

(f) A declaration declaring that the Defendants have a right to exercise the Early Termination Option as set forth in the agreements hereto without paying Plaintiff an "exit

fee."

(g) That Plaintiff be enjoined from demanding an Exit Fee from Supreme.

(h) That Supreme be awarded such other and further relief, including all appropriate equitable relief, as this Court deems appropriate under the circumstances.

/s/ James M. Campbell
JAMES M. CAMPBELL (0004733)
JULIET K. FALCONE (0075859)

## CERTIFICATE OF SERVICE

A copy of the Answer and Counterclaim have been served via the Court's electronic case management system, upon:

Brian Green, Esq.
James Marx, Esq.
Shapero and Green LLC
25101 Chagrin Boulevard
Beachwood, Ohio 44122

/s/ James M. Campbell
JAMES M. CAMPBELL (0004733)
JULIET K. FALCONE (0075859)
2717 Manchester Road
Akron, Ohio 44319
P: (330) 745-2422
F: (330) 745-2447
Attorneys for Defendants