

## Schedule No. 001, dated September 2, 2014

Incorporating by reference Master Agreement No. 1425 dated September 2, 2014 (the "Master Agreement") between Maxus Capital Group, LLC, as Lessor, and Supreme Manufacturing, Inc., as Lessee.

**LESSEE AGREES TO LEASE THE DESCRIBED EQUIPMENT FROM LESSOR, AND LESSOR BY ACCEPTANCE OF THIS SCHEDULE AGREES TO LEASE THE EQUIPMENT TO LESSEE, ON THE TERMS AND CONDITIONS SET FORTH IN THIS SCHEDULE AND THE MASTER AGREEMENT, WHICH IS INCORPORATED HEREIN BY REFERENCE.**

Equipment Description: All Equipment, whether now owned or existing or hereafter acquired, wherever located from time to time, including but not limited to the Equipment described on the attached Exhibit A, with all replacements, substitutions, replacement parts, additions, repairs, accessions & accessories incorporated therein and/or affixed thereto and all proceeds thereof.

1. Base monthly Rent: $4,583.39
2. Equipment Location: 327 Billy Boyd Rd., Stoneboro, PA 16153
3. Equipment Return Location: To be determined by Lessor
4. Expected Delivery Date: Unless and until Lessee has executed an Installation Certificate, Lessor may establish the actual delivery date by reference to the shipping records of the Supplier or the shipper or by other reliable means.
5. Base Term: 38 months
6. Lessee Address for Notices (if different from Master Agreement):
7. Value of Calculation for Stip Loss Value: $150,000.00
8. Special Terms:

   i.) Security Deposit to be held by Lessor in any of its accounts without the payment of interest, and to be applied by Lessor as set forth in Section 19 of the Master Agreement: $4,583.39.

   ii.) Prior to Acceptance: Prior to the receipt by Lessor of an executed Installation Certificate, including during a period of progress payments, Lessor may, in its sole discretion, cease funding the purchase of Equipment if (a) Lessee does not execute an Installation Certificate prior to September 30, 2014; or (b) Lessor determines in its sole discretion that a material adverse change has occurred in Lessee's financial condition or business, after which determination Lessee will immediately repay all amounts advanced by Lessor plus interest and charges due.

   iii.) End of Base Term Options: Fair Market Value Purchase Option. Provided no Event of Default or condition which, with the giving of notice or the lapse of time or both, would constitute an Event of Default has occurred and is continuing, Lessee shall have the option at the End of Term, upon notice to Lessor given as provided in Section 2(b) of the Master Agreement, to purchase all, but not less than all, of the Equipment for a purchase price equal to the then fair market value of the Equipment. For purposes of this paragraph, and in lieu of any other definition thereof, "fair market value" means the purchase price determined by Lessor in its reasonable discretion in accordance with its usual procedures. Upon receipt of such purchase price, together with any applicable taxes then or thereafter due, Lessor shall execute and deliver to Lessee a bill of sale for the Equipment, without representation or warranty except that the Equipment is free and clear of any Liens, claims or encumbrances created by or through Lessor. Lessee covenants that it will not enter into negotiations for future lease or financing transactions with Lessor's Assignee without prior written consent of Lessor.

   iv.) Provided that no Event of Default shall have occurred and be continuing, Lessee shall be entitled, at its option upon 120 days prior written notice to Lessor, to purchase all but not less than all of the Equipment covered by the Lease, effective as of the calendar day which falls exactly 24 months after the Rent Commencement Date, by paying the Early Purchase Option Amount shown below:

   After Rent Payment #24

   Early Purchase Option Amount* = $60,825.00

   *The Early purchase Option Amount is calculated by multiplying the Early Purchase Option percentage of 40.55% by the Equipment Cost.

   v.) Rider R– Return and Maintenance Rider attached.

MRB 12/11

**DEFENDANT'S EXHIBIT 2**

Schedule Page 2 of 2
Maxus Lease No. 1425-001

9. Financial Covenants.

i.) Beginning FYE December 31, 2014, owner's withdrawals, compensation, distributions, intercompany transfers, shareholders notes will be prohibited unless a minimum cash flow to debt service ratio of 1.20 to 1.00 is achieved before consideration of said items, once achieved, Lessee can make distributions such that a cash flow debt service coverage of 1.10 to 1.00 is maintained. The cash flow debt service ratio will be measured as follows: [Net Income (loss) + Depreciation/Amortization + Interest Expense + Management Fees ( as expensed) + noncash expenses – owner's/partner's withdrawals-distributions-intercompany transfers – Management Fees ( at the greater of the amount expensed-shareholder loans] / Actual Debt Service, on an annual basis beginning with FYE 12/31/14.

ii.) Limitation on Distributions – All owner's/partners' withdrawals, including but not limited to compensation, distributions, salaries, intercompany transfers, management fees, shareholder loans, etc., will be subordinate to AmeriServ Financial Bank's debt service. In any event, Lessee is subject to an at all times 1.10 to 1.00 cash flow/debt service ratio, to be tested quarterly ion a trailing twelve month basis.

iii.) Additional debt – Lessee shall not incur any additional debt without prior written consent of Lessor.

iv.) No material change in ownership with our written prior consent of Lessor.

v.) Lessor shall have the unconditional right of first refusal on all financing opportunities with Lessee.

vi.) Annual Federal Tax Returns of the Lessee to be submitted within 30 days of filing thereof, and in any event, not later then October 31st of each year.

vii.) Annual Projected Financial Statements, for the Lessee, to be submitted by the first day of each fiscal year.

viii.) Quarterly Financial Statements of the Lessee to be submitted within 45 days of each quarter end.

THIS SCHEDULE (INCORPORATING THE MASTER AGREEMENT) CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE LESSOR AND LESSEE AS TO THE LEASE AND THE EQUIPMENT. EXCEPT AS THIS SCHEDULE CONFLICTS WITH OR IS INCONSISTENT WITH THE TERMS OF THE MASTER AGREEMENT AS INCORPORATED HEREIN, THE TERMS OF THE MASTER AGREEMENT ARE UNMODIFIED AND REMAIN IN FULL FORCE AND EFFECT. LESSEE ACKNOWLEDGES THAT ON OR BEFORE LESSEE'S SIGNING OF THIS SCHEDULE IT RECEIVED A COPY OF THE CONTRACT EVIDENCING LESSOR'S ACQUISITION OF THE EQUIPMENT.

Lessee: Supreme Manufacturing, Inc.

By: _Neil S. Hoobler_

Print Name: _NEIL E. HOOBLER_

Title: _PRESIDENT_

Lessor: Maxus Capital Group, LLC

By: _Anthony N Granata_

Anthony N. Granata

Vice President

This is Counterpart No. __1__ of 2 serially numbered counterparts. To the extent that this document constitutes chattel paper under the Uniform Commercial Code, no security interest in this document may be created through the transfer and possession of any counterpart other than Counterpart No. 1.

Equipment List Exhibit A to Maxus Lease Schedule 1425-001

| DESCRIPTION | SERIAL NUMBER |
|---|---|
| **Miscellaneous** | |
| SULLAIR AIR COMPRESSOR | 007-02000356 |
| CLEMCO SAND BLASTING EQUIPMENT | 15777 |
| AIR PUMP | |
| TOOLS & RIGGING | |
| EXHAUST FANS | |
| STORAGE TRAILER | |
| GRACO PAINT EQUIPMENT | BB05530 |
| EXHAUST FANS | |
| STARTING MOTOR | |
| HYDRAULIC PUMP | |
| TOOL & STORAGE TRAILERS & MISC ITEMS (NOT CAPITALIZED-ESTIMATE) | |
| | |
| **OFFICE EQUIPEMENT** | |
| HP DESIGN JET PRINTER | ESA8A08120 |
| DESKS, TABLES & MISC | |
| CNC SOFTWARE | |
| DELL POWEREDGE PC | 1DX2X641 |
| PRO ENGINEERING SOFTWARE | |
| ACT SOFTWARE | |
| VISION COMMUNICATIONS | |
| ACT CONSULTING | |
| DELL INSPIRON 9300 LAPTOP | 43488130465 |
| ACT CONSULTING | |
| QUEST SOFTWARE | |
| ROB'S COMPUTER | 7GB7XB1 |
| PHONE SYSTEM | NT7B75AAAG |
| LAPTOP - AL WOODLEY | |
| BROTHER FAX/COPIER | U61574J6J265448 |
| DISPLAY BOOTH | |
| ACT CONTACT SOFTWARE | |
| TV - VIZIO M37ONV | LAQKGWAL3102371 |
| DELL POWEREDGE T410 SERVER | 2BF1F01 |
| ENGINEERING & OFFICE COMPUTERS | |
| FILING CABINETS & MISC ITEMS (NOT CAPITALIZED-ESTIMATE) | |
| | |
| **SHOP EQUIPMENT** | |
| PIRANHA IRON WORKER | P3-3525 |
| HYD-MECH BAND SAW | 21090702 |
| LINCOLN DC400 WELDER | AC-820186 |
| LINCOLN CV400 WELDER | V1950325316 |
| LINCOLN CV400 WELDER | AC-820272 |
| 40 KW D-LINE RECTIFIER | |
| LINCOLN DC400 WELDER | AC-740589 |
| LINCOLN PLASMA CUTTER | |
| LINCOLN CV400 WELDER | V1950325312 |
| LINCOLN CV400 WELDER | AC-820337 |
| MAX 40 PLASMA | 61-002658 |
| PRESS BRAKE 400 TON | 3971 |
| KOKIE CNC CUTTING MACHINE | VG99202 |
| 25 HP AIR COMPRESSOR | 8D11398070 |
| PRESS BRAKE REFURBISHMENT | |
| LINCOLN SP-175 | V1990317323 |
| TIG MAXSTAR WELDER-MILLER 250 | KH315806 |
| 5 TON UNDERHUNG CRANE - 1999 Keystone Crane Com | K9-3979 |

*Ad.*
Lessee

Page 1 of 2

ANG
Lessor

Equipment List Exhibit A to Maxus Lease Schedule 1425-001

| DESCRIPTION | SERIAL NUMBER |
|---|---|
| LIFT MAGNET | |
| PRESS BRAKE | |
| MILWAUKEE MAGNETIC DRILL | |
| 20 TON OVERHEAD CRANE - 2002 Ace World Companie | 10443 |
| YORK PORTABLE LINE BORINING MACHINE | |
| 3 USED WELDERS        AC-620875 | KB117025, KB117015 |
| MILLER BOBCAT 250 D NT WELDER/GENERATOR | LF031072 |
| 10 TON CRANE PONTOON ROLLER | SPH-234-0226-04 |
| 5 TON CRANE - 2006 Keystone Crane Company | K6-5025 |
| AIR COMPRESSOR | |
| TORQUE WRENCH | |
| OMEGA FORK LIFT | OM508T20FS |
| REBUILD CRANE MOTOR | |
| REBUILD GRACO SPRAY EQUIPMENT | |
| AIR COMPRESSORS MODEL GA26+FF | API314459 & API314173 |
| 10 HYDRAULIC BORING MACHINE | |
| ENERPAC PORT-A-POWER | |
| JIGS, SMALL TOOLS & MISC ITEMS (NOT CAPITALIZED-ESTIMATE) | |

**VEHICLES**

| | |
|---|---|
| INTERSTATE TRAILER | 1UK500G2041047179 |
| BENCH FOR INTERSTATE TRAILER | |
| 2006 3/4 TON CHEVROLET TRUCK | 1GCHK23UX6F256157 |
| 2009 CHEVROLET TAHOE | 1GNFK23089R201611 |
| 2005 CHEVROLET 1500 TRUCK | 2GCEK19BX51312591 |
| 2012 PARKER 20'X8' DECK OVER TRAILER | 13Z0A022C1005509 |

**INVENTORY**
STEEL, COMPONENTS & HARWARE
CONVEYORS IN PROCESS

As additional collateral to secure Lessee's indebtedness to Lessor, Lessee grants to Lessor a first priority security interest in all of Lessee's right, title and interest in Lessee's accounts, whether now owned or existing or hereafter created, acquired or arising, and all proceeds of teh foregoing.

_AH._
Lessee

Page 2 of 2

_ANG_
Lessor

Rider R
RETURN AND MAINTENANCE RIDER

September 2, 2014

This Rider is applicable only to the equipment listed under the following headings of Exhibit A to the Schedule: (a) Miscellaneous; (b) Shop Equipment; and (c) Inventory (such equipment, solely for purposes of this Rider, the "Equipment").

Reference is made to Schedule No. 001 (the "Schedule") to Master Agreement No. 1425 dated September 2, 2014 (the "Master Agreement"), each by and between Supreme Manufacturing, Inc., as Lessee, and Maxus Capital Group, LLC, as Lessor. The term "Lease" shall refer to the Schedule which incorporates the Master Lease. Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Lease.

As an inducement for the parties to enter into the Lease, Lessor and Lessee hereby agree as follows:

1. Physical Condition. In addition to all other terms and conditions of the Lease relating to maintenance, repair and return of the Equipment, Lessee agrees to comply with the following terms and conditions:

   (a) Lessee agrees to maintain and lubricate the Equipment in accordance with the maintenance manual and lubrication schedule recommended by the original equipment manufacturer ("OEM"). Written records of the lubrication and service will be kept, dated, and confirmed in writing by the appropriate officer or manager of Lessee.

   (b) Replacement parts for the Equipment must be purchased from the OEM or sources approved by the OEM. Copies of all purchase orders for such replacement parts shall be maintained by Lessee.

   (c) At the time of the return of the Equipment, the Equipment must be fully operational and able to perform its functions as originally intended without repair or overhaul; be clean with all boots, guards and seals fully functional; and be free of rust.

   (d) All warranty and maintenance/repair records for the Equipment shall be returned with the Equipment.

2. Inspection. If, after any inspection of the Equipment by Lessor or its agent, a determination is made that the Equipment is not in conformance with the conditions set forth in this Rider or as required by the express terms of the Lease, then Lessor will advise Lessee in writing as to such discrepancies. Lessee shall have 30 days after its receipt of the list of discrepancies to repair or correct same at its sole expense. Lessee will pay all expenses for a re-inspection by Lessor or its agent if additional corrective measures are still required.

3. Storage. If Lessee has not exercised its purchase option for the Equipment, then for a period of 120 days after the End of Term, Lessor shall have the right to conduct a private sale or an auction of the Equipment from Lessee's facility with Lessee's full cooperation and assistance. During this 120-day period, Lessee shall: (a) cause the Equipment to remain operational; (b) insure the Equipment in accordance with the terms of the Lease; and (c) provide adequate electrical power, lighting, heat, water and compressed air, as applicable, necessary to maintain and demonstrate the Equipment to any potential buyer. During this 120-day period, Lessee shall not deinstall, disassemble or return the Equipment to Lessor until the earlier of the end of the 120-day period or a date specified by Lessor.

1

Rider R
Maxus Lease 1425-001

4. Removal, Packaging, Transportation. In addition to all other terms and conditions of the Lease as it relates to the return of the Equipment, Lessee agrees to comply with the following terms and conditions:

  (a) When returning any Equipment, any special transportation devices, such as metal skids, lifting slings and brackets, which were provided with the Equipment when originally delivered must be used.

  (b) Lessee shall: block all sliding members; properly secure any chains, pulleys, gearing, drums, hooks, control box and wiring and any other swinging components; and wrap, box, band and label all other components. All such work shall be done in a conscientious and workman like manner so as to facilitate the efficient reinstallation of the Equipment.

  (c) All wheels, rails, supports and other hardware installed related to the Equipment shall be similarly deinstalled and prepared for shipment on appropriate skids. None of the cross members and rails will have a deformity of any kind.

  (d) All process fluids shall be removed from the Equipment and disposed of in accordance with prevailing waste disposal laws and regulations. Materials which are designated as "hazardous materials" by any federal or state regulatory authority may not be shipped with the Equipment.

  (e) All internal fluids associated with the Equipment, such as lubricating oil and hydraulic oil, shall conform to the OEM's specifications. All internal fluid systems shall be filled to operating levels. Filler caps are to be secured and disconnected hoses are to be sealed to prevent spillage.

  (f) All lock keys are to be wired together and secured to a major external component of the Equipment.

  (g) None of the heating, cooling and hydraulic equipment will have any system leaks. All fluids should be drained properly.

  (h) All tanks and hoses shall be fluid tight. Frayed and worn hoses and cables are to be replaced by new hoses and cables which meet or exceed OEM's specifications.

  (i) All sheet metal and fabricated housings and panels will be in good appearance and repair, and not dented or modified.

  (j) All aspects of the machine will operate at the OEM's specifications.

  (k) All Equipment and appurtenances shall be free of all decals and markings, other than those affixed by the OEM. In-plant custom numbering and labeling, if any, will be removed prior to return.

  (l) The Equipment will be clean and in good appearance and any repairs or painting done in a professional manner to OEM specifications.

  (m) The Equipment and appurtenances will be in suitable condition for immediate and continued use in service for which it was designed and built.

Electronically Filed 01/20/2016 10:40 / / CV 16 857603 / Confirmation Nbr. 647306 / CLSDH

(n) Lessee shall provide the same electrical wiring, appurtenances, prints, schematics, operations manuals, software and auxiliary equipment as received when first delivered.

(o) Lessee shall provide updated and current release software as available from the manufacturer.

(p) All safety limit switches, interlocks, motion – no motion switches, drop bar safety, and safety warning signs are to be installed and operating properly.

(q) Pumps and motors shall be quiet, not in need of maintenance or repair and shall perform at 100% of OEM's original specifications without slippage. .

Except as expressly amended by this Rider, the Lease remains unchanged and in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this Rider effective as of the date listed above.

Lessee: Supreme Manufacturing, Inc.

By: [signature]

Print Name: NEIL E. HOOBER

Title: PRESIDENT

Lessor: Maxus Capital Group, LLC

By: [signature]

Print Name: Anthony N. Granata

Title: Vice President



## MAXUS CAPITAL GROUP

### Installation Certificate for Schedule No. 001, dated September 2, 2014

Incorporating by reference Master Agreement No. 1425 dated September 2, 2014 between Maxus Capital Group, LLC, as Lessor, and Supreme Manufacturing, Inc., as Lessee.

Lessee hereby certifies (i) that the All Equipment, whether now owned or existing or hereafter acquired, wherever located from time to time, including but not limited to the Equipment described on the attached Exhibit A, with all replacements, substitutions, replacement parts, additions, repairs, accessions & accessories incorporated therein and/or affixed thereto and all proceeds thereof, have been delivered to the specified Equipment Location, and inspected by Lessee and have been found to be in good order as of the Installation Date, and (ii) that the quantity, description, and serial numbers as indicated below are true and correct.

Installation Date: 9/2/14

Equipment Location: 327 Billy Boyd Rd., Stoneboro, PA 16153

Lessee hereby represents and warrants to Lessor that on the Installation Date:

1. The representation and warranties of Lessee contained in the Master Agreement and the Schedule are true and correct in all material respects as though made as of the Installation Date.

2. No Event of Default as defined in the Master Agreement has occurred and is continuing as of the Installation Date.

3. There are in full force and effect such insurance policies with respect to the Equipment as are required pursuant to the Master Agreement.

Lessee: Supreme Manufacturing, Inc.

By: *[signature]*

Print Name: NEIL E. HOOSLER

Title: PRESIDENT

This is Counterpart No. 1 of 2 serially numbered counterparts. To the extent that this document constitutes chattel paper under the Uniform Commercial Code, no security interest in this document may be created through the transfer and possession of any counterpart other than Counterpart No. 1.

Equipment List Exhibit A to Maxus Lease Schedule 1425-001

| DESCRIPTION | SERIAL NUMBER |
|---|---|
| **Miscellaneous** | |
| SULLAIR AIR COMPRESSOR | 007-02000356 |
| CLEMCO SAND BLASTING EQUIPMENT | 15777 |
| AIR PUMP | |
| TOOLS & RIGGING | |
| EXHAUST FANS | |
| STORAGE TRAILER | |
| GRACO PAINT EQUIPMENT | BB05530 |
| EXHAUST FANS | |
| STARTING MOTOR | |
| HYDRAULIC PUMP | |
| TOOL & STORAGE TRAILERS & MISC ITEMS (NOT CAPITALIZED-ESTIMATE) | |
| **OFFICE EQUIPEMENT** | |
| HP DESIGN JET PRINTER | ESA8A08120 |
| DESKS, TABLES & MISC | |
| CNC SOFTWARE | |
| DELL POWEREDGE PC | 1DX2X641 |
| PRO ENGINEERING SOFTWARE | |
| ACT SOFTWARE | |
| VISION COMMUNICATIONS | |
| ACT CONSULTING | |
| DELL INSPIRON 9300 LAPTOP | 43468130465 |
| ACT CONSULTING | |
| QUEST SOFTWARE | |
| ROB'S COMPUTER | 7GB7XB1 |
| PHONE SYSTEM | NT7B75AAAG |
| LAPTOP - AL WOODLEY | |
| BROTHER FAX/COPIER | U61574J6J265448 |
| DISPLAY BOOTH | |
| ACT CONTACT SOFTWARE | |
| TV - VIZIO M37ONV | LAQKGWAL3102371 |
| DELL POWEREDGE T410 SERVER | 2BF1F01 |
| ENGINEERING & OFFICE COMPUTERS | |
| FILING CABINETS & MISC ITEMS (NOT CAPITALIZED-ESTIMATE) | |
| **SHOP EQUIPMENT** | |
| PIRANHA IRON WORKER | P3-3625 |
| HYD-MECH BAND SAW | 21090702 |
| LINCOLN DC400 WELDER | AC-820186 |
| LINCOLN CV400 WELDER | V1950325316 |
| LINCOLN CV400 WELDER | AC-820272 |
| 40 KW D-LINE RECTIFIER | |
| LINCOLN DC400 WELDER | AC-740589 |
| LINCOLN PLASMA CUTTER | |
| LINCOLN CV400 WELDER | V1950325312 |
| LINCOLN CV400 WELDER | AC-820337 |
| MAX 40 PLASMA | 61-002658 |
| PRESS BRAKE 400 TON | 3971 |
| KOKIE CNC CUTTING MACHINE | VG99202 |
| 25 HP AIR COMPRESSOR | BD11399070 |
| PRESS BRAKE REFURBISHMENT | |
| LINCOLN SP-175 | V1990317323 |
| TIG MAXSTAR WELDER-MILLER 250 | KH315806 |
| 5 TON UNDERHUNG CRANE - 1999 Keystone Crane Com | K9-3979 |

*AH.*
Lessee

*ANG*
Lessor

Page 1 of 2

Equipment List Exhibit A to Maxus Lease Schedule 1425-001

| DESCRIPTION | SERIAL NUMBER |
|---|---|
| LIFT MAGNET | |
| PRESS BRAKE | |
| MILWAUKEE MAGNETIC DRILL | |
| 20 TON OVERHEAD CRANE - 2002 Ace World Companie | 10443 |
| YORK PORTABLE LINE BORINING MACHINE | |
| 3 USED WELDERS    AC-520575 | KB117025, KB117015 |
| MILLER BOBCAT 250 D NT WELDER/GENERATOR | LF031072 |
| 10 TON CRANE PONTOON ROLLER | SPH-234-0228-04 |
| 5 TON CRANE - 2006 Keystone Crane Company | KS-5025 |
| AIR COMPRESSOR | |
| TORQUE WRENCH | |
| OMEGA FORK LIFT | OM606T20FS |
| REBUILD CRANE MOTOR | |
| REBUILD GRACO SPRAY EQUIPMENT | |
| AIR COMPRESSORS MODEL GA26+FF | API314459 & API314173 |
| 10 HYDRAULIC BORING MACHINE | |
| ENERPAC PORT-A-POWER | |
| JIGS, SMALL TOOLS & MISC ITEMS (NOT CAPITALIZED-ESTIMATE) | |

**VEHICLES**

| | |
|---|---|
| INTERSTATE TRAILER | 1UK500G2041047179 |
| BENCH FOR INTERSTATE TRAILER | |
| 2006 3/4 TON CHEVROLET TRUCK | 1GCHK23UX6F256157 |
| 2009 CHEVROLET TAHOE | 1GNFK23089R201611 |
| 2005 CHEVROLET 1500 TRUCK | 2GCEK19BX51312591 |
| 2012 PARKER 20'X8' DECK OVER TRAILER | 13Z0A022C1005509 |

**INVENTORY**
STEEL, COMPONENTS & HARWARE
CONVEYORS IN PROCESS

As additional collateral to secure Lessee's indebtedness to Lessor, Lessee grants to Lessor a first priority security interest in all of Lessee's right, title and interest in Lessee's accounts, whether now owned or existing or hereafter created, acquired or arising, and all proceeds of teh foregoing.

Lessee

Lessor

Electronically Filed 01/20/2016 10:40 / / CV 16 857603 / Confirmation Nbr. 647306 / CLSDH



# MAXUS
CAPITAL GROUP

**Schedule No. 002, dated March 17, 2015**

Incorporating by reference Master Agreement No. 1425 dated September 2, 2014 (the "Master Agreement") between Maxus Capital Group, LLC, as Lessor, and Supreme Manufacturing, Inc., as Lessee. This Schedule No. 002, as it incorporates the Master Agreement, is referred to herein as the "Lease."

*LESSEE AGREES TO LEASE THE DESCRIBED EQUIPMENT FROM LESSOR, AND LESSOR BY ACCEPTANCE OF THIS LEASE AGREES TO LEASE THE EQUIPMENT TO LESSEE, ON THE TERMS AND CONDITIONS SET FORTH IN THIS LEASE AND THE MASTER AGREEMENT, WHICH IS INCORPORATED HEREIN BY REFERENCE.*

Equipment Description: The inventory consisting of the component parts necessary to construct One (1) SMI-16 Yard Twin – MD (Mine Duty Gantry) Dredge (all of the foregoing, whether characterized as "equipment" or "inventory", as each such term is defined in Article 9 of the Uniform Commercial Code as adopted by the State of Ohio, is referred to herein, collectively, as the "Equipment"), as such parts are further detailed and referenced in purchase order No. 313596 dated October 2, 2014, as amended, (the "Purchase Order") between Lessee and Sully-Miller Contracting Company dba United Rock Products ("United Rock Products"), with all replacements, substitutions, replacement parts, additions, repairs, accessions, accessories, work in progress incorporated therein and/or affixed thereto, and all proceeds thereof. A true and correct copy of the Purchase Order is attached hereto as Exhibit "A".

1. Base monthly Rent: The amount calculated by multiplying the monthly rent factor of 0.6333% by the total amount of funds advanced by Lessor hereunder divided by 30 and then multiplied by the actual number of days outstanding.

2. Equipment Location: 327 Billy Boyd Rd., Stoneboro, PA 16153 and various locations approved by Lessor.

3. Expected Delivery Date: Lessor may establish the actual delivery date by reference to the shipping records of the supplier of the components, the shipper or by other reliable means.

4. Base Term: 12 months from the date of this Schedule.

5. Lessee Address for Notices (if different from Master Agreement): N/A

6. Value of Calculation for Stipulated Loss Value: $8,166,700.00

7. Special Terms: i.) Security Deposit to be held by Lessor in any of its accounts without the payment of interest, and to be applied by Lessor as set forth in Section 19 of the Master Agreement: Not applicable.

ii.) Section 17 (a) of the Master Agreement is hereby amended by adding the following clause thereto as an "Event of Default": "(9) Lessee is in default in the payment or performance of any obligation under any lease with Lessor, whether a lease originated by Lessor or one by which Lessor is lessor by virtue of an assignment."

iii.) To further secure Lessee's obligations owing to Lessor, Lessee hereby grants Lessor a security interest in all of its assets (the "Additional Collateral"), whether now owned or hereafter acquired by Lessee, including, but not limited to, all of the following assets of Lessee (capitalized terms used below in this Section 7(iii) of this Lease have the meaning given to them by Article 9 of the Uniform Commercial Code as adopted by the State of Ohio unless defined otherwise herein): General Intangibles; Accounts and Deposit Accounts; Tangible and Electronic Chattel Paper; Goods; Fixtures; Instruments; Promissory Notes; Letter-of-Credit rights and advances of credit, except those subject to Regulation U; life insurance policies; Supporting Obligations; Equipment; Furniture; Inventory; Software; Documents; and Investment Property; all Proceeds in connection with the aforementioned property including, but not limited to, all rents, revenues, issues, profits, and any other form of value received from the sale, lease, license, encumbrance, collection or other disposition; and all ledger receipts, books, records, documents, computer records, programs, storage media, and software evidencing any and all of the foregoing. Notwithstanding the foregoing, the Additional Collateral shall not include any deposit accounts maintained by Lessee for employee payroll and payroll withholding taxes. Said Additional Collateral shall secure not only the amounts which Lessee is obligated to pay under this Lease, but also all other present and future indebtedness or obligations of Lessee to Lessor of every kind and nature whatsoever.


PLAINTIFF'S EXHIBIT

Schedule No. 002
Maxus Lease No. 1425-002
Page 2 of 5

iv.) Lessee shall periodically submit draw requests to Lessor in the form attached hereto as Exhibit "B" (a "Request for Advance") for: (a) payment to Lessee's vendors for purchases of Equipment; (b) reimbursement of costs incurred by Lessee in the fabrication of the Equipment and the production of the SMI-16 Yard Twin – MD (Mine Duty Gantry) Dredge contemplated under the Purchase Order (the "Dredge"); and (c) amounts due Lessor under this Lease. Any draw request representing labor shall only be made once a calendar month and shall be paid to the extent of actual labor costs incurred by Lessee for that particular month. Lessee may submit draw requests to Lessor for payment, other than labor, no more often than twice a month, by the 5th and 20th of each month or, if such a day is not a business day, then on the immediately following business day. Each draw request for payment to Lessee's vendors for purchases of Equipment shall be accompanied by a true and correct copy of (i) Lessee's purchase order to the vendor, (ii) the vendor's invoice, (iii) if the materials are to be delivered to Lessee's site, the bill of lading or other proof of delivery of the materials to Lessee's site in a form acceptable to Lessor, or (iv), if Lessee is the supplier of the component parts, an invoice to Lessor. As to overhead costs and the like, Lessee shall furnish Lessor with evidence of those costs in such form as is reasonably acceptable to Lessor and its Assignee. Each Request for Advance shall be in an amount not less than One Hundred Thousand and no/100 Dollars ($100,000.00), or such lesser amount as Lessor may accept in its sole discretion. Within five (5) business days of its receipt of a draw request complying with the terms of this Section 7(iv), provided no Event of Default or condition which, with the giving of notice or the passage of time or both, would constitute an Event of Default has occurred and is continuing, Lessor shall cause payment to be made in accordance with the Request for Advance. In no event shall the aggregate amount of the advances made by Lessor to Lessee pursuant to this Lease exceed Six Million and no/100ths Dollars ($6,000,000.00). Moreover, Lessee shall not submit, and Lessor shall not be obligated to honor, a Request for Advance if the dollar amount of such Request, when added to the aggregate amount of all previous Requests for Advances, exceeds the sum of the then aggregate accrued Milestone amounts as of the date of the Request for Advance, as such Milestone amounts are listed on Exhibit "B" to the Purchase Order. By way of example and not limitation, the aggregate Milestone amounts as of May 14, 2015 total $4,045,670.10; therefore, the aggregate amount of the Requests for Advances made by Lessee through May 14, 2015, shall not exceed $4,045,670.10. The first Request for Advance shall include, among other payments, the payment to Lessor of (i) $163,334.00 representing the issuance fee as set forth in the Commitment Letter dated February 18, 2015 from Lessor to Lessee and (ii) $30,000.00 to be held in an account at AmeriServ Financial Bank (Lessor's "Assignee") owned by Lessee, but pledged to Lessor subject to an agreement mutually acceptable to Lessor, Lessee, and Assignee, which monies will be used to pay reasonably anticipated legal expenses to be incurred by Lessor or its Assignee in the event United Rock Products fails to perform under its Purchase Order.

v.) Lessor will have the right to cease making advances hereunder and Lessee will immediately repay all amounts advanced by Lessor hereunder plus Base monthly Rent and other charges due if Lessor determines in its sole discretion that: (a) the progress of Lessee's construction of the Dredge is not in compliance with the Milestone dates as set forth in Exhibit "B" of the Purchase Order; (b) Lessee is unable to ship the Dredge components to the Buyer's Location (as such term is defined in the Purchase Order) on or before December 2, 2015; (c) a material adverse change has occurred in Lessee's financial condition or business; or (d) an Event of Default has occurred and is continuing.

vi.) Provided no Event of Default or condition which, with the giving of notice or the passage of time or both, would constitute an Event of Default has occurred and is continuing, Lessee must, at the expiration of the Base Term, purchase all, but not less than all, of the Equipment for a purchase price equal to the greater of the following: (a) the then fair market value of the Equipment (as hereinafter defined) or (b) the aggregate of all amounts advanced by Lessor hereunder plus all accrued and unpaid Base monthly Rent and any other charges due hereunder. As used herein, the term "End of Lease Option" refers to Lessee's obligation to purchase the Equipment pursuant to this Section 7(vi). For purposes of this Section 7(vi), and in lieu of any other definition thereof, "fair market value" means the purchase price determined by Lessor in its reasonable discretion in accordance with its usual procedures. Upon receipt of such purchase price, together with any applicable taxes then or thereafter due, Lessor shall execute and deliver to Lessee a bill of sale for the Equipment, without representation or warranty except that the Equipment is free and clear of any liens, claims or encumbrances created by or through Lessor. Lessee covenants that until complete satisfaction of its obligations owing Lessor under this Lease, including, without limitation, its payment of the Early Purchase Option Amount or End of Lease Option, it will not enter into negotiations for future lease or financing transactions with Lessor's Assignee without the prior written consent of Lessor.

vii.) Provided that no Event of Default or condition which, with the giving of notice or the passage of time or both, would constitute an Event of Default has occurred and is continuing, Lessee may purchase all but not less than all of the Equipment covered by this Lease, effective as of the date of the delivery of the Dredge components to the Buyer's Location (as such term is defined in the Purchase Order), by paying Lessor the "Early Purchase Option Amount" defined below:

> The Early Purchase Option Amount is equal to the sum of all advances made by Lessor to Lessee hereunder, plus any and all unpaid amounts then due and owing Lessor under this Lease, including but not

Schedule No. 002
Maxus Lease No. 1425-002
Page 3 of 5

limited to, unpaid rent, expenses, penalties or fees due or to become payable to Lessor upon lease expiration or termination.

viii.) Lessee hereby grants to Lessor non-exclusive rights of use and license, without cost, to all intellectual property and other proprietary technology related to the Dredge until complete satisfaction of its obligations owing Lessor under this Lease, including, without limitation, its payment of any of the Early Purchase Option Amount or End of Lease Option. Upon Lessee's complete satisfaction of its obligations owing Lessor under this Lease, including, without limitation, its payment of any of the Early Purchase Option Amount or End of Lease Option, Lessor's license to such intellectual property and other proprietary technology shall expire.

ix.) In addition to Lessor's rights under Section 9(a) of the Master Agreement, Lessee hereby grants Lessor oversight authority of the Dredge construction which will be done on a periodic basis and include site visits at both Lessee's and its sub-contractors' locations. Upon execution of this Lease, Lessee shall prepare and deliver to Lessor an Excel spreadsheet detailing anticipated Milestone dates and work to be completed by said dates (the "Milestone Report"). During the Base Term, Lessee shall deliver a monthly report to Lessor on the fifth day of each month updating the Milestone Report, including a percentage towards completion of the Dredge. Failure to deliver such monthly report to Lessor within five business days of its due date shall constitute an Event of Default hereunder. Lessee shall pay Lessor a monthly servicing fee for such oversight services, plus reimburse Lessor for any and all expenses incurred by Lessor in monitoring the construction and fabrication of the Dredge, including travel expenses related to Lessor's site visits. Lessee acknowledges and agrees that any inspections, oversight services, or monitoring performed by Lessor hereunder shall be for the sole and exclusive benefit of Lessor and its Assignee and shall not be relied upon by Lessee for any purpose whatsoever.

x.) As additional collateral to secure Lessee's obligations owing to Lessor and/or its Assignee, Lessee shall cause United Rock Products, or an affiliate thereof, to secure a standby letter of credit and a documentary letter of credit, each (a) in a form and substance satisfactory to Lessee and its Assignee, (b) naming Lessee as beneficiary and (c) to be issued by Crédit Agricole Corporate and Investment Bank, New York Branch. The standby letter of credit shall be in the amount of Eight Hundred Sixteen Thousand Six Hundred Seventy and no/100 Dollars ($816,670.00) (the "10% LC") and the documentary letter of credit shall be in the amount of Six Million One Hundred Twenty-Five Thousand Twenty-five and no/100 Dollars ($6,125,025.00) (the "75% LC"). Lessee shall strictly comply with and shall do all things necessary and appropriate to satisfy the terms and conditions the 10% LC and the 75% LC such that the full amount available under each such letters of credit shall be applied towards the Lessee's obligations under this Lease, including without limitation, Lessee's payment of the Early Purchase Option Amount or End of Lease Option.

xi.) Lessee hereby assigns and grants a security interest to Lessor in of all of Lessee's right, title, and interest in and to the 10% LC and the 75% LC, including but not limited to all Proceeds (as hereinafter defined) and rights to payment in connection with such letters of credit. As used in this Lease, the term "Proceeds" has the same meaning ascribed to that term under Article 9 of the Uniform Commercial Code as adopted by the State of Ohio. Upon request of Lessor or its Assignee, Lessee shall provide written notification and/or confirmation to the issuing bank, nominated bank, confirming bank, and any other persons or entities as Lessor may deem necessary or appropriate of the assignment and security interest granted to Lessor hereunder in the letters of credit contemplated herein and such written notice and/or confirmation shall be in form and substance satisfactory to Lessor and its Assignee.

xii) Lessee hereby assigns to Lessor all of its rights, but none of its obligations, in the Purchase Order, including its right to receive the 10% down payment and the 75% payment due from United Rock Products under the Purchase Order and all Proceeds in connection with the Purchase Order. Lessee shall promptly and timely provide Lessor with a copy of any notice it receives from United Rock Products during the Base Term, including, but not limited to, any notice of termination of the Purchase Order. Lessee shall also deliver to Lessor evidence of delivery of all of the Dredge components to the Buyer's Location in the form of copies of the related bills of lading.

xiii) Upon the occurrence of an Event of Default, Lessor may, in addition to all rights and remedies it has under Section 17(b) of the Master Agreement, take possession of and utilize any materials, plant, tools, equipment and property of any kind owned or leased by Lessee and may exercise all of the rights of Lessee under any subcontracts that Lessee has entered into with respect to any of the Equipment, in order to (a) complete the delivery of the Dredge components in accordance with the terms of the Purchase Order, or (b) to complete the components of the Dredge for sale to a third party. Notwithstanding any other provision of this Lease to the contrary, the remedies in this Section 7 (xiii) and elsewhere in this Lease provided in favor of Lessor are not exclusive but are cumulative and may be exercised concurrently or consecutively and will be in addition to all other remedies in Lessor's favor under this Lease, at law or in equity.

8. Additional Covenants.

Schedule No. 002
Maxus Lease No. 1425-002
Page 4 of 5

      i) Prior to submitting any Request for Advance hereunder, Lessee shall obtain and deliver to Lessor the written consent of United Rock Products to the assignment by Lessee of the Purchase Order, any interest therein and any money due or to become due thereunder, to Lessor and its Assignee.

      ii) Throughout the term of this Lease, Lessee shall (a) promptly and timely comply with all of its obligations under the Purchase Order, and (b) comply, and cause its subcontractors to comply with, the insurance requirements described in Section 13(c) of the "General Terms and Conditions" of the Purchase Order.

9.   Financial Covenants.

      i.) Beginning with fiscal year ended December 31, 2014, owner's withdrawals, compensation, distributions, intercompany transfers, shareholder notes will be prohibited as to Lessee unless a minimum CF/DS Ratio (as hereinafter defined) of 1.20 to 1.00 is achieved before consideration of said items. Once achieved, Lessee may make such distributions so long as a CF/DS Ratio of 1.10 to 1.00 is maintained. Any such distribution shall be subordinate to AmeriServ Financial Bank's debt service. The "CF/DS Ratio" is defined as follows: [net income (loss) + depreciation/amortization + interest expense + management fees (as expensed) + noncash expenses - owner's/partner's withdrawals - distributions - intercompany transfers - management fees (as expensed) -- shareholder loans] ÷ actual debt service, on an annual basis.

      ii.) Until complete satisfaction of its obligations owing Lessor under this Lease, including, without limitation, its payment of any of the Early Purchase Option Amount or End of Lease Option, Lessee shall not incur any additional debt without prior written consent of Lessor.

      iii.) No material change in ownership with out written prior consent of Lessor.

      iv.) Until complete satisfaction of its obligations owing Lessor under this Lease, including, without limitation, its payment of any of the Early Purchase Option Amount or End of Lease Option, Lessor shall have the unconditional right of first refusal on all financing opportunities with Lessee.

10.  Financial Reporting Requirements

Lessee shall promptly provide or cause to be promptly provided the following financial information to Lessor and its Assignee:

      i.) Within 30 days of Lessee's fiscal year end and commencing with the fiscal year ending December 31, 2014, Lessee's annual company prepared financial statements;

      ii.) Within 30 days of filing, but in any event no later than October 31st of each year, Lessee's annual federal income tax returns (complete with all worksheets, notes and schedules), which shall be in form and content satisfactory to Lessor and Assignee;

      iii.) No later than the first (1st) day of each fiscal year of Lessee, Lessee's annual projected financial statements; and

      iv.) Within thirty (30) days of each quarter end, Lessee's internally prepared quarterly financial statements.

<center>[THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK]
[SIGNATURES ON FOLLOWING PAGE]</center>

Schedule No. 002
Maxus Lease No. 1425-002
Page 5 of 5

THIS SCHEDULE NO. 002 (INCORPORATING THE MASTER AGREEMENT) CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE LESSOR AND LESSEE AS TO THE LEASE AND THE EQUIPMENT. EXCEPT AS THIS SCHEDULE NO. 002 CONFLICTS WITH OR IS INCONSISTENT WITH THE TERMS OF THE MASTER AGREEMENT AS INCORPORATED HEREIN, THE TERMS OF THE MASTER AGREEMENT ARE UNMODIFIED AND REMAIN IN FULL FORCE AND EFFECT. LESSEE ACKNOWLEDGES THAT ON OR BEFORE LESSEE'S SIGNING OF THIS LEASE IT RECEIVED A COPY OF THE CONTRACT EVIDENCING LESSOR'S ACQUISITION OF THE EQUIPMENT.

| Lessee: Supreme Manufacturing, Inc. | Lessor: Maxus Capital Group, LLC |
|---|---|
| By: _Neil E. Hoobler_ 3/3/15 | By: _Anthony N. Granata_ |
| Print Name: NEIL E. HOOBLER | Anthony N. Granata |
| Title: PRESIDENT | Vice President |

This is Counterpart No. __1__ of 2 serially numbered counterparts. To the extent that this document constitutes chattel paper under the Uniform Commercial Code, no security interest in this document may be created through the transfer and possession of any counterpart other than Counterpart No. 1.